FANIMATION v. DANS FAN CITY 1180 FANIMATION v. DANS FAN CITY Because a reasonable jury could find infringement on the record before it. Let's start with the 450 patent. As this court said in Egyptian Goddess, when the difference between the patented design and the accused product are compared in the context of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claim design that differ from the prior art. When we look at it, make a comparison here between the prior art and the claim design, the five best views of the prior art from apples to apples comparison are found in pages 116 and 117 in the appendix and in pages 141 to 143 in the appendix. The views to be considered for the patented design are on pages 33 and 34. Now the side views, which are pages 117 and 143 in the appendix, those side views of the prior art show that the blades are at various angles that can be seen. And you can see both the top and the bottom surfaces, and they are the same. When you look at the patent designs at figs three through six on page 34, you'll see that the upper surface is smooth and the bottom surface is textured. And this difference presented is a very striking difference. Then if you also look at the top view of the prior art, which is at page 142, shows the textured surface again. But if you look at the top view of the patent on page 33, you'll see that that stark, smooth surface is presented. So that's a very strong difference between the patented design and the prior art. Now moving in that context to a comparison of the patented design to the accused product, you'll see that, number one, the views of the accused product are shown in pages 281 to 286 in the appendix. When those side views of pages 281 to 284 are compared to those side views of the patent on page 34, you'll see almost an inegality. You'll see both fans have that contrasting top surface and bottom surface, and that both patents are able to show both of those surfaces practically simultaneously in that side view. Then if you look at the top view, which is on page 286 of the appendix, and you look at that top view, which is fig two of the patent design, they are both practically the same. That stark, white, smooth appearance. So in five of the six views of the patent, it's the same thing in the accused design. Now even on the bottom surface. Is the ordinary observer going to be looking at the fan from the ceiling down? It's possible, because sometimes ceiling fans are in an area where you're coming down the stairs from a foyer, or say, going into a basement playroom or something like that, and you will be able to view the top of the fan and your vision will be dominated by the top of the fan. Then you may see it from the side as you descend a little further, and when you get down, you get an oblique view. And then if you get right underneath it and look right straight up, you might get that bottom view. And that's the view that the court focused on. Five out of six of the views in the patent, when compared to the accused product, are practically the same. Only in the bottom view is there some difference. And there's even an issue of fact regarding what is the bottom view of the accused product. Comparing pages 123. So how do we define the ordinary observer, then? Someone who would view ceiling fans from every angle? Well, it's going to be someone that encounters ceiling fans either in sales, in installations, in homes or businesses, anyone. I mean, we've all seen ceiling fans. And we've all purchased, I think, ceiling fans at one time or another in our life or had them installed in our homes. And so we're all ordinary observers in that regard. This case is the opposite, I would suggest, of Whitman Saddle. In that case, there was a finding that the patented design showed a drop pommel that was not present in the prior art and was not present in the accused products. Here, the very appearance, the simultaneous presentation of the contrasting figures, the contrasting surfaces in those side views and also in the top view are appropriated in the accused product. And so there should be a finding of infringement. I think the lower court made its error in focusing on not the differences between the patented design and the prior art, but rather focused on the similarities. That's exactly finding out what's not in the patented design. And that's why the court was looking for other differences and hung the hat on non-infringement. But a reasonable jury, looking at this, especially the striking similarities in five of the six views, could find infringement. And therefore, we ask this court to reverse that summary judgment of non-infringement. Looking at the 683 patent, there is no apple-to-apple comparison between the prior art and the patented design. The only prior art presented were two books, one on basketry and the other on weaving, plating, the woven design. Nevertheless, if the court had taken a more nuanced view, they would have discovered that all of those articles presented in those two books, none of them showed the distinctive edge design of that fan or the relative flat woven appearance of the fan. Almost all of those articles in those two books have some degree of curvature or some degree of depth to them that not are presented. So this flat woven surface and the distinctive edge design, which the court noted but didn't do any further investigation on, they would have found is not present in that prior art. Then, taking that as your context and moving to the accused product, you'll see that the front of the accused product, which is shown at page 128 in your appendix, and compare that to page 37, which is the front view of the patented blade, they're practically identical. Do I hear you saying that the way to interpret a design patent is that it covers everything that doesn't impinge on the prior art? No. It covers the overall appearance presented by the differences between the patented product and the prior art. Because it wouldn't be covering everything, because then the claim would have so many limitations that mere minor differences would enable a finding of non-infringement. And this court has said in international seaway trading that minor differences cannot and shall not prevent infringement. So it's the overall appearance that has to be considered, but it's based upon those differences between the prior art and the patented design. And that's why this term used the term context. Get a context and understand what that overall appearance is and whether that has been appropriated by the accused product. It's just a court report. I'm just really exploring this. The prior art shows a fan where the blades are shaped like petals. And the judge concluded that the design patent could not cover all designs with fans where the blades are shaped like petals. And then looked at the differences between the accused design, the prior art, the patented product and concluded as a matter of construing, I assume as a matter of construing what's covered by the patent, that it needs to be fairly narrowly construed to the point where it didn't include the accused product. Are you talking about we're talking on the 683 patent now, the woven one? Yeah. Yes. Well, the lower court, what they first did was, I think, basically found that they were so dissimilar that there wasn't a real need to look at the prior art was one. And then secondly, in looking at the prior art, took a 40,000 foot view and said, I'm either going to have to construe the claim so broadly it will cover any fan blade that has a woven appearance, or I'm going to construe it so narrowly it doesn't cover any woven fan blade. I don't think that was a necessary construction. I think the court noted that there was a distinctive edge design. Could have looked at those articles in those books to see if this distinctive edge design was present, determined that it wasn't present. And if it's not present, then that's part of the patented design to be considered in the overall appearance analysis. So I don't think the court below gave a properly nuanced view of the prior art. The court at one point says the prior art is a particularly crowded field, but then only cites three items. Were there others that were before the court? The only things that were before the court are what you have in the record at pages, I believe it's 184 to 222. And it's those books regarding baskets, weaving, there's some handbags, there's a vest, there's a few other odds and ends. But some of them do have, I mean, you can look, you can see edge patterns, but none of them have the edge pattern that's shown in the patented design. And that is very substantially appropriated by the accused product, is present in six of the seven views that are in the patented design and would be present in the same six views of the accused product. For that reason, we'd like to ask that this court reverse the summary judgment of non-infringement of 683 patent as well. Thank you. We'll save you rebuttal time. Mr. Lachman. Good morning, Your Honors. May it please the court. The district court in this case granted summary judgment on both 450 patent and the 683 patent, and did so correctly. And that ruling should be affirmed. It applied the correct standard, which is enunciated in Egyptian goddess, that is the ordinary observer standard. One ordinary observer familiar with the prior art would be deceived into believing that the accused product is the same as the patented design. Do you agree that we should be looking at the product from every angle? Yes, Your Honor. In the Crocs versus ITC case, the court instructed that all elements of the patented design, including elements that may not even be visible when the product is in use, should be considered. And elements that might be considered at the beginning of the lifecycle, when one is buying the product, should be considered, as well as those elements that would be more evident when the product is constructed. So in this instance, the court should be considering all aspects of the patented design. In the 450 patent, those elements include the blade shape, the design on the blade, the way the blades are configured together to create a star-shaped pattern. In the 683 patent, the court should consider all the elements of the patented design, which include the ornamental design that appears on the surface of the patent, of the blade, the shape of the blade, as well as the ridging on the side of the blade. And on the back of the blade is a vertical line, which appears on the patented design, but does not appear on the accused design. So the court has instructed us that we should look at all of those aspects, and not focus in particular on any one aspect. Appellant, in the case of the 450 patent, would ask us to focus on that side view, which, by the way, is kind of the least illustrative of the way the blades are shaped, or what design appears on the blade. But focus that, and focus on the fact that the top is flat and the bottom is not. Well, looking at the prior art, the Islander fan, a prior art that was created by the appellant, is virtually identical to the patented design, except for that top consideration. And in fact, there was a lance fan with a number of different blade designs, all with leaf shapes, that had designs on the bottom, flat on the top. An ordinary observer would be familiar with that configuration, with that design, would get the same impact as the impact of standing eye view with the patented design, in terms of flat and active. But aren't we essentially making a finding of fact here, as to what an ordinary observer would believe? Your Honor, there is that line at some point, but it's a line that this court has instructed us that we can make. If you go back to the Egyptian goddess case, it was a case that was decided on summary judgment. A case was decided on summary judgment based on the point of novelty test the court tweaked and said that we should be looking at the ordinary observer test, rather than the point of novelty test, and then affirmed that summary judgment. In the world of summary judgment, courts routinely have to look at findings of fact, whether something is close or not close. And this court, this district court, correctly looked at these two, the patented design and the accused design, looked at the differences, looked at the prior art, and concluded that an ordinary observer would not confuse these products, one for the other. But it isn't, well, yes, the Gorham test is if the ordinary observer looking at one would think that it was the other. But isn't the ordinary observer more likely to be a jury of half a dozen or a dozen people, rather than the judge who has listened to the eloquent arguments on both sides as to the fine points of the difference? The design patent really is sort of a gross observation, is it not, as to how the ordinary person coming to buy a ceiling fan, so it's up there, whether you would think one was the other. Your Honor, the ordinary observer is something of a legal construct, as is the reasonable man. It is a construct that is not defined by one person or by a group of jurors. It's a construct that looks at the reasonable person, or in this case, the ordinary observer, and determines what that ordinary observer would bring. In this case, considering items of decorative home accessories, I would submit that the court will typically have background information on that, will not need experts to say what someone looking for home accessories would need to rely upon, and is really no better or worse positioned than a jury, which may never look for a home accessory, but nevertheless is tasked with being the ordinary observer, one who is purchasing this product. So we don't believe that it was at all inappropriate. In fact, it's necessary for a court to consider the ordinary observer, much as a jury would be tasked with considering the ordinary observer and not merely considering their own predilections or life experiences. They, too, would need to consider that. Is the ordinary observer charged or permitted or authorized, or is it presumed the ordinary observer is looking at these products side by side, or that you're only looking at the one that happens to be on display? Your Honor, I believe in the court's precedence it said the ordinary observer is familiar with the prior art, is aware of the prior art, but is not necessarily sitting with the prior art beside it and comparing piece by piece. And in fact, appellants, I believe, are not correct in trying to vivisect prior art and say it doesn't look like this because it has this difference and that difference, and it doesn't look like this because it has this other difference. The ordinary observer comes to, in this case, a fan store, familiar with what the prior art looks like, familiar with the Islander fan in the case of the 450 patent, familiar with the fact that Mr. Lance and his prior art had flat top blades with designs on the bottom. And with that information, the information that one with an ordinary concern for buying a ceiling fan would have, looks at the accused product and decides whether that accused product, in fact, looks so much like the patented design that he or she concludes that it is the same product. And in each of the instances here, both the accused product accused under the 450 patent and the accused product accused under the 683 patent, there are significant distinctions between the patented design and the accused product. In the case of the 450 patent, there are a number of distinctions in regard to the shape of the blade itself. The patented design has what is often called a wide oval blade. The width of the blade is almost equivalent to the height, and then it has a wide oval shape. The accused product does not have a wide oval. It has a narrow, more of a paddleboard type shape to it. The design on the two is different. In the case of the patented design under the 450, it's a very traditional palm leaf style design on the face of the blade. That means that all of those lines that radiate upward radiate from a single point at the bottom of the blade. In the accused product, it's different. There is a line top to bottom on the blade, and lines radiate from that middle point, much as branches on a tree would radiate from the trunk of the tree. That can be seen, among other places, at pages 14 of Apolli's brief. So there are differences in the shape of the fan blades. There are differences in the design on the face of the fan blades. And there are differences in the configuration, in that the patented design brings the blades close together so that they overlap, create a star pattern. The accused product does not. A person, an ordinary observer, would walk into the fan store familiar in mind's eye with that patented design, encounter this, and believe it's different, because it is not the same. It has those significant differences. That person would also have seen flat blades on top, designs on the bottom. And considering all of those factors, an ordinary observer, without question, would decide that that is a difference. It's no reasonable juror who could come to the conclusion that an ordinary observer would believe otherwise, based on the prior art. And this court has instructed that prior art should be considered. And when it's crowded, that's important. In the Crocks versus ITC case, 598F1303, the court instructed that if the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer. If the design for the 450 patent, in fact, was new, its term of the design of the face of the blades, the shape of the blades, the configuration of the blades, it would still be constrained by what appears on the design claimed itself. The claim can't extend beyond that. But an ordinary observer might give more importance to that configuration if he or she had not seen similar configurations in the past. Here they had. And the distinctions between the patented design and the accused design are sufficiently significant, such that the ordinary observer would not conclude they're the same. In regard to the 683 patent, appellant seeks to distinguish prior art that's been identified by appellant and try to reduce the importance of that prior art. In particular, the appellant seeks to discount the importance of baskets and other ornamental products that have incorporated the very same ornamental design that appears on the face and the back of the 683 patent, this octagonal weave design. It's not something that is new or original to the appellant. It has been out and known in the world in woven basket patterns for some number of years. It appears at pages A209 and A184 to 210 of the record. It's shown again in Appley's brief at page 30. And in fact, the record shows that these baskets come in a number of shapes, including a spade shape that actually looks a lot like a fan blade. It's depicted at page A217, and again in Appley's brief at 30. Appellant seeks to say, well, those baskets don't have the same edge as the 683 design patent. Appellant really misses the point. And it's a point that a predecessor court to this recognized in the N. Ray Glavis case, CCPA. It's at 230 F. Second, 447. In that case, the court was grappling with what importance you place on prior art, which is an ornamental design, periwinkle that could be on a plate or on a grill. And the court, in considering that prior art and its applicability in the context of obviousness, wrote that, thus, if the problem is merely one of giving an attractive appearance to a surface, it is immaterial whether the surface in question is that of wallpaper, an oven door, or a piece of crockery. The importance of the prior art identified by the appellant in this woven weave is not that it doesn't have the same edge that the patented invention or the patented design has in the 683 patent. The importance of this prior art is that it shows the very same ornamental design. So you're saying there's no way any woven design could ever infringe this patent? No, Your Honor, I'm not saying that. I am saying that you must consider both the ornamental design, which could be more different in terms of the differences that are in the accused product and in the design patent. But the design patent, the 683 design patent, does not merely seek to protect that ornamental design as it applies to a ceiling fan blade, because there are not environmental lines all the way around the fan blade. Appellant was aware that you could place functional environmental lines that would disclaim the specific shape of a portion of the blade. They did that at the bottom of the blade. But they did not extend those lines all the way around the fan blade itself. And if they had, we might have a different case. Because at that point, you would be looking merely at that ornamental design as applied to a fan blade face. But the 683 patent claims much more than that. It claims that design in connection with a specific shape. And as we note in our brief, shape matters. Customers care. Ordinary observers care about blade shape. In fact, Fanimation has a trademark for a wide oval blade using a palm leaf design and also has a design patent that it got later for that same palm leaf design as applied to a narrow blade. Obviously, based on Fanimation's own actions, customers care about blade shape. And in the case of the 683 patent, it's not merely that ornamental design, that hexagonal leaf. It's that element of the design in connection with a specific fan blade shape, in connection with a specific edging, and with a specific back. And the district court correctly concluded that in connection with considering all of those elements, which is what we must do under Kroc versus ITC, in considering all of those elements, no ordinary observer would be deceived into believing that the accused product is the same as the design protected by the 683 patent. Are there any other questions? OK. Thank you, Mr. Lewis. Thank you, Your Honor. Mr. Loughlin. Thank you, Your Honor. May it please the court. A couple of points I would like to discuss from Appleby's argument. He mentioned the lance fan, which is shown in pages 82 and 87 of the appendix. If you look at those, number one, you'll know that there's not a single view of that prior art fan in the record that shows a top and bottom view, or a side view. All of them are an oblique view. So the top view is never observable. So you can't tell what's on top. It's not actually in the record. So we don't know that there's a smooth top on any of those fans. Number two is all of those fans have a blade that looks like a piece of Swiss cheese with holes in it. And that hole creates irregularities and interrupting of the planar surface of the blade, so that it does not present the same smooth top surface that would be presented by the patented design and the accused product. So we would submit that the lance fan doesn't show that. Furthermore, the lance patents, none of them are directed to a ceiling fan. They are directed to a ceiling fan blade. And even if you look at the top of the blades for those patents, all of them have contour lines. They have holes in them. They show scalloped edges. All of them have more texture than would be presented by the accused product and by the patented design. And that's why we would maintain that including or looking at those fans from the prior art does not really change the analysis we presented earlier. I'd like to also discuss in that comment that Council made in regard to the 450 patent, he talked about page 14 showing one blade from the patented fan and a single blade from the accused product. I'd like to note that the perspective between those two, they're not at the same scale. So they look differently than they would if they were properly drawn to scale. So I just bring that to the court's attention. That does remind me of your argument about the district court relying on the wrong figures. Are you backing off of that? I mean, it appears the district court just in converting it into the document, it distorted it. We agree that that's probably what happened. We're just indicating that that's what happens in these when you're going purely on a documentary basis. That sometimes those perspectives can change. It may affect the way you view it. Certainly reasonable minds could differ as to whether those aspects that are viewed are important or not. And I'd also like to point out the contrast between 123, which is the bottom view of the accused product that Appalee relies on, and 281 that we rely on. The one in 281 shows that there is a certain degree of at least touching or overlap in the fan blades, whereas their depiction of the bottom shows a very stark difference. I think there's a genuine issue of material fact in that evidence alone. And reasonable minds could differ as to select which one and use it in your determination of looking for overall similarity. I would like to also point out that we should have never gotten to the and when phrase that's in Egyptian goddess. In this context of comparing the prior art and the patented design, and in finding these important aspects of contrasting blade surfaces, the presentation simultaneously in the side views, stark presentation from the top, that it's not so similar that we start looking for minor differences, which is what the court did, because the court didn't really look at the prior art correctly. And finally, I would say that we do think that the prior art presented in the 683 patent is important. The court noted that the 683 patent has a distinctive edge design, and that prior art does not show that distinctive edge design. It dominates six of the seven views in the patent, and it is present in the accused product, would dominate the same six views of that product, and our important reason that reasonable minds may differ, but a finding of infringement could be found on this record. For that reason, we ask that this court reverse both summary judgments of non-infringement. Thank you. Thank you, Mr. Lachman. Thank you, Mr. Lewitt. The case is taken under submission. Thank you. Thank you. The next case is number 2011-1337, Celsus In Vitro Incorporated against Sales Direct and In Vitro Gin Corporation. Mr. Kelly. Thank you. Good morning. Adam Kelly for the plaintiff appellant, Celsus In Vitro, Inc. This appeal is the denial of a preliminary injunction addressing an alleged design-around process of defendants' currently enjoined process, which is the subject of pending appeal 10-1547. In denying the injunction, the district court abuses discretion when it misconstrued the term density gradient fractionation in claim 1 and imported that term into claim 10. This improper denial severely disrupted the status quo by permitting a large competitor to return to the market, continue inflicting additional reparable harm on the much smaller Celsus. We pray for this court to correct this injustice by vacating the denial and restoring the status quo by instructing the district court to enter a preliminary injunction because we have met our burden to show the second preliminary injunction is appropriate. Turning to the central issue on appeal, claim construction, this court owes no deference to either the district court's construction of density gradient fractionation in claim 1 or its decision to affirmatively import that positive limitation into claim 10. Let me ask you a question. The claim chart, the only claim chart I could find in the record, is at A10013, at the very last page of the volume 3 of the appendix. It's unclear whether that's from the first preliminary injunction proceeding or the second.